NOT DESIGNATED FOR PUBLICATION

No. 117,116

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SHAWN E. COLLINS JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; TERRY L. PULLMAN, judge. Opinion on remand filed March 1, 2019. Reversed and remanded with directions.

*Jennifer C. Roth* and *Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Lesley A. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., STANDRIDGE, J., and STUTZMAN, S.J.

PER CURIAM: After granting review, the Kansas Supreme Court remanded this case for reconsideration in light of its recent decision in *State v. Clapp*, 308 Kan. 976, 425 P.3d 605 (2018). We begin our analysis with a brief review of the facts and holding in *Clapp*.

1

The State charged Phillip L. Clapp with 13 counts of criminal conduct. Clapp entered into a plea agreement with the State, in which he agreed to plead guilty to all of the offenses and the State agreed not to oppose a dispositional departure to probation. The district court followed the plea agreement, sentencing Clapp to a prison term of 118 months and granting him probation for a term of 36 months.

The State moved to revoke Clapp's probation. Clapp stipulated to violating his probation as alleged by the State. Based on the stipulation, the district court found Clapp violated his probation, revoked Clapp's probation, and heard argument on disposition. The State argued Clapp had his chance at probation and should be ordered to serve his prison sentence. Defense counsel asked the district court to follow the recommendation of Clapp's intensive supervision officer by ordering Clapp to serve an intermediate 180-day sanction in the Department of Corrections and to reinstate probation with a condition that he get a mental health evaluation and medication.

Stated generally, the procedure for revoking an offender's probation or assignment to community corrections is governed by K.S.A. 2016 Supp. 22-3716, which includes a series of graduated intermediate sanctions that the district court generally must impose if an offender has violated a technical condition of his or her probation. These sanctions range from continuation or modification of the terms of the offender's probation to brief periods of confinement in jail or longer periods of confinement in prison. The sanctions gradually increase depending upon the number of sanctions already imposed. See K.S.A. 2016 Supp. 22-3716(c)(1)(A)-(D). In this case, Clapp had yet to receive any sanctions because this was his first probation violation. Therefore, under the statute, the district court had the option of continuing or modifying the terms and conditions of probation and/or imposing an intermediate sanction of confinement in a county jail to be imposed in two or three consecutive day periods. K.S.A. 2016 Supp. 22-3716(c)(1)(A), (B). Instead

of choosing one of these two options, however, the district court imposed an intermediate sanction of 180 days in prison followed by an extension of his probation for 36 months.

At some point after Clapp served his intermediate prison sanction, the State filed a second motion to revoke Clapp's probation. At a hearing on the motion, the district court found Clapp violated the terms and conditions of his probation. After hearing argument on the issue of disposition, the court found Clapp failed to value community corrections as a way to help change how Clapp thought and lived his life. And, although the district court acknowledged that Clapp had not committed a new crime, had not absconded, had a job, and was still in treatment, the court held revocation of probation and imposition of Clapp's sentence was in Clapp's best interests based on the type of convictions leading to Clapp's probation, Clapp's criminal history, and Clapp's dishonesty with his intensive supervision officer. As a result, the district court revoked Clapp's probation and ordered Clapp to serve his original prison sentence of 118 months. With regard to the issue of a graduated sanction, the Supreme Court made the following finding in its opinion:

> "In revoking Clapp's probation and imposing his underlying sentence, the district court did not mention K.S.A. 2014 Supp. 22-3716(c)(9), nor did it make *any* explicit findings regarding how imposing an intermediate sanction would jeopardize the safety of the public or be contrary to Clapp's welfare. Any suggestion that the district court was implicitly relying on the bypass provision of subsection (c)(9) when revoking Clapp's probation at the hearing is belied by the journal entry. That document contains a preprinted check box so that the court may indicate: 'Court revoked pursuant to K.S.A. 2013 Supp. 22-3716(c)(8) or (c)(9)—state reasons in comment box.' The district judge did not check that box and made no other comments in the journal entry that could be construed as reliance on subsection (c)(9)." *Clapp*, 308 Kan. at 989.

Clapp appealed from the revocation and imposition of sentence, claiming in part that the district court failed to state with particularity the statutory findings required by K.S.A. 2014 Supp. 22-3716(c)(9) to bypass the statutory intermediate sanctions for

3

parole violators. A panel of our court affirmed the sentence, finding in part that K.S.A. 2014 Supp. 22-3716 does not require the district court to make statutory findings to bypass intermediate sanctions when a violator already has served a 180-day intermediate sanction, and that even if required in this case, the district court implicitly satisfied the particularity requirement to revoke based upon public safety.

Clapp filed a petition for review with the Kansas Supreme Court, which was granted. After the issues were briefed and the case argued, the court ultimately held that the district court's decision to impose a sanction of 180 days in prison after only one probation violation did not conform to the graduated sanctioning scheme in K.S.A. 2014 Supp. 22-3716(c), which permits such a sanction only after ordering an intermediate sanction of confinement in a county jail to be imposed as a two-day or three-day consecutive period. With regard to the district court's decision to revoke Clapp's probation and order him to serve his original 118-month prison sentence after his second probation violation, the court held that the district court failed to comply with K.S.A. 2014 Supp. 22-3716(c)(9) criteria necessary to bypass the graduated sanctioning scheme. The criteria for bypassing sanctions under K.S.A. 2014 Supp. 22-3716(c)(9) requires the district court to find and set forth with particularity its reasons for finding that the safety of members of the public will be jeopardized or that the welfare of the offender will not be served by an intermediate sanction. In the absence of compliance with the graduated sanctioning scheme and the failure to find and set forth with particularity its reasons for bypassing graduated sanctions, the court reversed and remanded for the court to hold a new dispositional hearing that complied with K.S.A. 2014 Supp. 22-3716. *Clapp*, 308 Kan. at 991.

### STATE V. COLLINS

In the case on remand, Shawn E. Collins Jr. pled guilty to possession of methamphetamine. In exchange, the State agreed to join Collins' sentencing

recommendation for a dispositional departure to probation. The district court sentenced Collins to a prison term of 42 months but granted the parties' joint request for a dispositional departure sentence and imposed a 12-month term of probation.

The State filed a warrant alleging that Collins had violated several conditions of his probation. At the probation violation hearing, Collins admitted to the alleged violations. Based on this admission, the district court made a finding that Collins had violated the terms of his probation. The court ordered Collins to serve two three-day "quick dips" in the county jail as intermediate sanctions. The court then continued Collins' probation but extended it for an additional 12 months.

After serving his intermediate sanctions in jail, the State filed a second warrant alleging Collins had continued to violate several terms and conditions of his probation. At the probation violation hearing, Collins once again admitted to the violations. The district court revoked Collins' probation and ordered him to serve a modified prison sentence of 40 months (instead of 42 months), with 12 months of postrelease supervision. Although the court acknowledged the general rule that intermediate sanctions of 120 or 180 days should be imposed when a second probation violation is established and the court already has imposed an intermediate "quick dip" sanction, the district court bypassed further intermediate sanctions based on its finding that imposing another intermediate sanction would jeopardize public safety and would not serve Collins' welfare. More specifically, the district court held that an intermediate sanction would not serve Collins' welfare due to his long-term history of drug use and failure to address his drug issues as required by the terms of his probation.

Collins appealed the district court's decision to revoke his probation, arguing the district court failed to set forth with particularity the reasons for finding that Collins' welfare would not be served if the intermediate sanction was imposed. A panel of this court rejected Collins' argument and affirmed the district court's decision. See *State v.*

5

*Collins*, No. 117,116, 2018 WL 671839, at *2-5 (Kan. App. 2018) (unpublished opinion). Collins filed a petition for review, which was granted by our Supreme Court. Approximately four months later, the Kansas Supreme Court summarily vacated the decision issued by this court and remanded the matter for reconsideration of our decision in light of *Clapp*, 308 Kan. 976.

ANALYSIS

Collins argues the district court's findings in his case lacked the particularity required under K.S.A. 2016 Supp. 22-3716(c)(9)(A). Specifically, Collins asserts the court's findings fail to explain how imposition of a 120- or 180-day intermediate sanction would not have served his welfare. Collins asserts the court's findings simply reflect the court's generalized belief that he will not be able to overcome his long-term history of drug use unless he is imprisoned.

In revoking Collins' probation without imposing a second intermediate sanction, the district court relied on the public safety and offender welfare exceptions in K.S.A. 2016 Supp. 22-3716(c)(9)(A). This subsection requires the district court to find and set forth with particularity the reasons for finding that the safety of the members of the public will be jeopardized by imposing an intermediate sanction. When the law requires a court to make findings and state them with particularity, the findings "must be distinct rather than general, giving exact descriptions of all details." *State v. McFeeters*, 52 Kan. App. 2d 45, Syl. ¶ 2, 362 P.3d 603 (2015). "Implicit findings by a court are insufficient when particularized findings are required by statute." 52 Kan. App. 2d 45, Syl. ¶ 3. Whether the district court's reasons are sufficiently particularized as required by statute is a question of law over which an appellate court has unlimited review. See 52 Kan. App. 2d at 49.

6

In *McFeeters*, the district court bypassed the graduated sanctions in revoking the defendant's probation in a drug case, stating:

"'My major concern is drug usage. This is a drug case; you've failed to go to treatment. You only reported from the records that I see for about two months and I don't know how many UAs you had in two months, but I would venture to say you didn't have that many. You had one that you were dirty, you may have had more, I don't know how many you had. That was one question I was going to ask Mr. James [the probation officer], unfortunately, he is not here today, but you stopped reporting in two months. I don't know about the drug treatment and what was set up and whether you could get in right away or not, but it seems to me if you had been on probation before, you knew what you needed to do, you did not do that, you picked up another charge in the meantime, albeit a minor charge, apparently, the municipal court charge, but I do have concerns. I read through last night your LSI-R report and the substance abuse evaluation and I think there was some question in the substance abuse evaluation how accurate your recollection was with regard to your usage of drugs. I think that there was some conflicts, at least the evaluator believed that you said different things different times as to your drug usage, but definitely the recommendation was for completion of the intensive outpatient treatment program which you did not do.'" 52 Kan. App. 2d at 47.

On appeal, this court found the comments in *McFeeters* were inadequate to satisfy K.S.A. 2014 Supp. 22-3716(c)(9). Accordingly, this court vacated the order sending McFeeters to prison and remanded the case to the district court for a new dispositional hearing. 52 Kan. App. 2d at 49. This court explained:

"The remarks made by the district court at McFeeters' revocation simply repeat the type of reasoning historically relied upon by sentencing courts in discussing amenability to probation when exercising their discretion to revoke the privilege of probation. The law has changed. Simply stated, the district court's conclusory remarks about McFeeters' apparent unwillingness or inability to conform his behavior to the requirements of probation fail to explain *how* [the safety of the] members of the public would be jeopardized if McFeeters remained on probation or *how* McFeeters' welfare

7

would not be served by imposition of the immediate sanctions under K.S.A. 2014 Supp. 22-3716(c)(1)." 52 Kan. App. 2d at 49.

Here, in revoking Collins' probation without imposing a second intermediate sanction, the district court relied on a written drug evaluation submitted to the court stating that Collins first started using methamphetamine when he was just 10 years old, that he became a regular user by the age of 12, and that he had been using a gram of methamphetamine daily for the last 10 years. With regard to the information in that report, the district court judge stated:

> "'THE COURT:  A ten-year meth addict isn't going to be cured with a 30 day inpatient treatment process. It's going to be a process over a number of years before the damage you've done to your brain heals sufficiently to where you can constructively accept treatment.
>
> "'I'm going to find that your inability or unwillingness to abide by terms and conditions of probation are a public safety concern. You're obtaining meth from somewhere. Obviously that's illegal. Obviously that fuels an illegal subculture. Drug deals obviously invoke safety concerns.
>
> "'I'm also going to find that a reinstatement of probation at this time would not be in your best interest because, quite honestly, you will again offend and pick up new charges, get another sentence, in my opinion. And that wouldn't be in your best interest. You're not ready to receive treatment yet. And you won't be, in my opinion, for quite a while.
>
> "'On that basis, I will find that both based on public safety considerations and not being in your best interest, I'm going to bypass the graduated sanctions under [K.S.A. 2016 Supp. 22-3716(c)(9)(A)].'" *Collins*, 2018 WL 671839, at *3-4.

In bypassing intermediate sanctions for Collins, the district court made the same mistake the court made in *McFeeters*. Specifically, the district court's remarks noting that an intermediate sanction would not jeopardize public safety and not serve Collins' welfare due to his long-term history of drug use are the kind of remarks that simply repeat the type of reasoning historically relied upon by sentencing courts when

8

considering whether to revoke or continue on probation. In essence, the comments made here by the district court were based on the "not amenable to probation" rationale that frequently was used by district courts—and accepted by appellate courts as within the range of acceptable discretion—prior to the 2013 amendments to K.S.A. 22-3716 that introduced the graduated sanctions protocol. Prior to the amendments, a district court was granted discretion to revoke probation on the basis that, in the court's opinion, probation simply was not going to work. As the court has made clear in *Clapp*, that type of broad expression is no longer adequate. In this case, the district court failed to make an explicit connection between Collins' failure to comply with the terms and conditions of probation and either jeopardy to the public's safety or the benefit to Collins of prison rather than continued probation.

Applying the legal holding in *Clapp* to the facts presented in this case, we find the district court failed to make the particularized factual findings necessary to bypass intermediate sanctions under K.S.A. 2016 Supp. 22-3716(c)(9)(A). In the absence of such particularity, we reverse the district court's decision to revoke probation and impose sentence and remand for the court to hold a new dispositional hearing that complies with K.S.A. 2016 Supp. 22-3716.

Reversed and remanded with directions.

\* \* \*

POWELL, J., dissenting: I disagree with the majority's opinion that the district court's bypass findings lacked sufficient particularity as required by K.S.A. 2016 Supp. 22-3716(c)(9)(A) and *State v. Clapp*, 308 Kan. 976, 425 P.3d 605 (2018). Accordingly, I dissent.

The majority rests its conclusion on the premise that the district court's findings "simply repeat the type of reasoning historically relied upon by sentencing courts" in discussing a defendant's amenability to probation. Slip op. at 8. Respectfully, the district court did more than that. In *Clapp*, our Supreme Court reversed the district court's bypass finding because of its "failure to set forth the reasons an intermediate sanction would have been a public safety issue or contrary to Clapp's welfare." 308 Kan. at 989. Here, the district court did outline why an intermediate sanction and continued probation would be contrary to Collins' welfare by stating:

> "I'm going to find that your inability or unwillingness to abide by terms and conditions of probation are a public safety concern. . . .

> "I'm also going to find that a reinstatement of probation at this time would not be in your best interest because, quite honestly, you will again offend and pick up new charges, get another sentence, in my opinion. And that wouldn't be in your best interest. You're not ready to receive treatment yet. And you won't be, in my opinion, for quite awhile.

> "On that basis, I will find that both based on public safety considerations and not being in your best interest, I'm going to bypass the graduated sanctions."

I am not sure how the district court could have been more clear or specific in its findings. It specifically informed Collins that continued probation, which would include a 120-day or 180-day prison sanction, would not be in his best interests because it would inevitably lead to him being charged with new crimes and accrue another sentence. Such a finding is not the same as simply making a finding that a probationer is not amenable to probation as many repeat probation violators do not necessarily commit new crimes. Such a finding is well within the particularity requirement mandated by K.S.A. 2016 Supp. 22-3716(c)(9)(A). I would affirm the district court.

10